# STATE v. CHEALEY

No. 6319.  Decided August 14, 1941.  (116 P. 2d 377.)

424

*Charles Welch, Jr.*, and *J. Lambert Gibson*, both of Salt Lake City, for appellant.

*Joseph Chez*, Atty. Gen., and *Calvin L. Rampton*, Deputy Atty. Gen., for respondent.

MOFFAT, Chief Justice.

The charge is involuntary manslaughter. The acts out of which the charge arose occurred a short distance south of where the Draper road crosses State Street on Highway 91, Salt Lake County. Defendant entered a plea of not guilty. The defendant had given some "hitch hikers" a ride. Among them was the deceased, who was riding on the bed or platform rack of the auto-truck. They had been picked up at different places between Gunnison and Provo. About four to six hundred yards south of the Draper crossroad as the defendant approached a gradual "S" curve he ran his truck off the road to the right. It overturned. One of the riders upon the platform part of the truck was killed in the mishap. The defendant was found guilty of the crime charged and the following errors are argued on his appeal:

"A. That the Trial Court erred in refusing to dismiss appellant's challenge for cause against Edwin Bliss, juror, after the said Edwin Bliss had expressed a prejudice and bias towards drinking of intoxicating liquors when there occurred an automobile accident in which intoxicating liquor was involved.

"B. That the Trial Court erred in denying the motion of the defendant for the dismissal of the case at the conclusion of the State's evidence for the reason that there was no causal connection shown between any unlawful act and the death of the deceased.

"C. That the Trial Court erred in refusing the defendant's motion for a directed verdict at the end of the case for the reason that there was no causal connection shown between the drinking and the

accident which resulted in the death of the deceased, and that there was no joint act or intent or act of negligence as is required by the law of the State of Utah.

"D. That the Court erred in permitting the witness LeRoy D. Williams to testify as an expert.

"E. That the Trial Court erred in admitting into evidence State's evidence State's Exhibit A over objection.

"F. That the court erred in overruling the defendant's objection to the conversation between Luther W. Smith and Lote Kinney at a time when the defendant was not present, for the reason that said conversation was hearsay as to the defendant.

"G. That the Trial Court erred in refusing to grant defendant's proposed instruction regarding the term "Criminal Negligence."

"H. That the Trial Court erred in refusing to grant defendant's proposed instruction number 3 regarding proximate cause.

"I. That the Trial Court erred in refusing to grant defendant's proposed instruction number 4 regarding the emergency rule, which is as follows: 'If the jury finds that the defendant acted as a reasonable prudent man would act under the circumstances to avoid an accident then he is not liable for the unforeseen consequences of his act and is not guilty.' "

The first error assigned is the refusal of the court to sustain a challenge of a jurror for cause. After the court had questioned the jurors generally, counsel for appellant asked whether any juror had any prejudice in or of itself to a man taking a drink or any religious scruples against it. To the question a juror said,

"I would if an automobile accident was involved, that was relating in any way to an automobile accident, I would be very strong against it, not on religious grounds."

Further questioning brought the reply from the juror that notwithstanding his previous answer that he would not be prejudiced.

We think the challenge should have been sustained. Section 105-31-18, subsection 2, provides a juror may be challenged for cause "for the existence of a state of mind on the part of the juror which leads to a just inference in reference to the case that he will not act with entire impartiality." Such a state of mind is known as actual bias. The two broad matters in the statute are

"just inference" and "entire impartiality." The juror's state of mind as shown by his own words prompts a "just inference" that he could not act with "entire impartiality." When viewed from the point of view of a defendant he should not be able to charge that a juror showed he was "not impartial." We are, however, of the opinion that the error was not prejudicial. The juror was preemptorily challenged. It is not shown that the defendant had exhausted his preemptory challenges or that this challenge required him to do so. The use of a preemptory challenge upon the juror objected to, left him with challenges which he might have used to remove other jurors had he desired to do so, insofar as the record shows.

The second point raised by appellant is that the court erred in refusing to grant appellant's motion to dismiss the cause for failure of proof to show any causal connection between any alleged unlawful act and the death of the deceased.

Assignments B, C, G, H and I will be discussed together. Assignment D is not well taken. The so-called "expert" witness qualified for limited matters about which he testified. The question of the signature was otherwise shown. The evidence complained of in assignment F was heresay as to defendant and if it should not have been excluded it was admissible only for impeachment purposes.

In this case, in order to support the verdict and judgment, the evidence must show that the death of Harlan Kofold was the natural and proximate result of an unlawful act on the part of the defendant. We will return to an analysis of the evidence on this point. Let us first examine the court's instructions. The instructions set forth a general background of unlawful acts to which the jury are directed to apply the evidence.

In instruction 5 the court instructed the jury that at the time of the alleged unlawful act charged in the information, the following acts were unlawful:

"(a) It was unlawful for a person to drive a motor vehicle upon a public highway at a speed greater than was reasonable and prudent having due regard to the traffic, surface and width of the highway, the hazzard at intersections, and the safety of other persons."

The above is a correct general statement of the law. It can serve no purpose in the instant case and should not have been given. There is no evidence of a speed that was greater than was reasonable and prudent. The evidence is that the speed was from 35 to 40 miles per hour. The place was not at or near an intersection, hence no intersection hazard. The state's theory of the case was that there was no traffic upon the highway at the time of the accident.

The (b) part of the instruction is based upon speed with different qualifying words as to control and care under other conditions. There was no evidence of excessive speed.

The (c) part of the instruction is again directed at speed. It reads:

"It was unlawful to drive a motor vehicle upon a public highway at a speed in excess of fifty miles per hour."

The question of speed was not involved in the trial of the cause. The state made no attempt to prove unlawful speed or that speed was related to the accident. A witness for the defendant testified that defendant was driving about 35 to 40 miles per hour. No other evidence was offered. Lawful speed at the place was 50 miles per hour. The jury was precluded under the evidence from finding that the defendant was driving at an unlawful rate of speed. So the (c) part of the instruction should not have been given.

In the (d) part the jury was further instructed that

"It was unlawful to drive a motor vehicle upon a public highway carelessly and heedlessly in wilful or wanton disregard of the safety of others, or without due caution and circumspection, at such a speed or in such a manner as to endanger any person."

Aside from the naked facts that the defendant drove his auto-truck off the right hand side of the highway—the side upon which he was lawfully driving, there is no evidence as to carelessness or heedlessness;—none as to doing so in wilful or wanton disregard for the safety of others. Turning off on the right hand side of the road might have been the result of a temporary diversion of attention to which all persons are at times subject, or falling asleep, or the approach of another car in the defendant's lane of the highway as maintained by him. The point is that the state made no attempt to explain any reason of circumstance or condition or cause other than the turning of the auto-truck off the highway. No attempt was made by the state to show that any person upon the highway was endangered. Explanations by reasoning back from results with no place to land are not helpful. They lead to speculations only.

Finally the court instructed the jury that

"It was unlawful for a person to drive a motor vehicle upon a public highway, while he was under the influence of intoxicating liquor *to such an extent that his ability to see objects ahead or to foresee the possibility of danger to others, or to operate such vehicle in an ordinarily careful manner was diminished in any substantial degree.*" (Italics added.)

If the state's evidence had shown that the defendant was under the influence of intoxicating liquor to such an extent that his ability to see objects ahead or to operate a vehicle in an ordinary careful manner was diminished in any substantial degree then the verdict of the jury ■ should stand. We find no evidence of such conditions or from which the jury might so conclude. The instructions given by the court covered the traffic laws accurately. The jury were permitted to go fishing into fields upon which no evidence was presented. The court in an excellent instruction required the jury to unite upon one or more of the unlawful acts, but left the field open to acts upon which the jury had no right to find a verdict of guilty. The

instruction as to unanimity of the verdict in such cases is so well worded that we give it as meeting a difficult situation where it is possible to find a verdict upon more than one ground.

"If you find from the evidence beyond a reasonable doubt and unanimously agree that the defendant committed one of the above mentioned unlawful acts and that such unlawful act was the proximate cause of the death of Harlan Junior Kofold, without there being any independent intervening cause, then you should bring in a verdict of guilty of involuntary manslaughter as charged in the information. If you do not so find beyond a reasonable doubt from the evidence herein that the defendant committed one of said unlawful acts and that it was the cause of the injury and death of Harlan Junior Kofold, then you should bring in a verdict of not guilty.

"Also, if you do not unanimously agree that the defendant committed the same one of the above mentioned unlawful acts, and that such act was the proximate cause of the death of the deceased, then you should return a verdict of not guilty. In other words, you should not find the defendant giulty if some of you believe that the death of the deceased was caused by the act of the defendant in driving while under the influence of intoxicating liquor, while others of you do not believe that he did such act, but do believe that the death of the deceased was caused by some other act of defendant. If, however, you find beyond a reasonable doubt and unanimously agree that defendant committed the same one act of those declared to be unlawful, and that it caused the death of the deceased, it matters not that you disagree as to whether defendant committed others of the above acts."

There is no substantial conflict in the evidence. There is evidence that defendant upon his liquor permit with money furnished by one of the riders with him bought a pint of whiskey at Nephi about 10 o'clock in the morning. The small boy who for a time rode in the front seat with defendant said the bottle was passed between Smith, a hitch-hiker, who furnished the money to buy the liquor, and defendant. How much defendant drank is not indicated, except by Smith, who as defense witness said he might have drank an inch or inch and a half off the first bottle. When this was done is not shown. It must have been some time before they reached Pleasant Grove, as Smith said the group

had consumed the contents of the bottle bought in Nephi. There seems to have been five persons in the truck after the last rider was picked up at Springville or Provo. As to any unusual driving of the auto-truck from Gunnison at 9. a. m. to the point of the accident near the State Street-Draper crossroads at 5 p. m. there is not a word of evidence in the record. A stop was made at Levan where a small bottle of beer was purchased. A stop was made at Nephi where a bottle of whiskey was purchased. A stop was made at Springville or Provo where others became riders on the auto-truck, and a stop was made at Pleasant Grove where a bottle of whiskey was purchased. The manner of driving, the ability of the defendant to drive normally or otherwise is not mentioned in the state's evidence. The boy who was in the cab with the driver at the time of the accident said in testifying on behalf of the defendant that defendant drove on his own side of the road and between 35 and 40 miles per hour.

At the scene of the accident soon other persons assembled. The defendant was helped out of the cab. He with others got the small boy from under the truck rack. Defendant's first concern, insofar as the evidence discloses, was a question to the boy as to whether he was hurt. Local persons who were soon at the scene said defendant helped in the lifting with two others in tipping the auto-truck back upon its wheels. None of the persons at the scene were asked about defendant's condition as to intoxication or his manner of driving. There are no facts from which any speculations might be indulged as to the cause of his driving off the highway. His own explanation was that because an automobile attempted to pass an approaching truck, and in so doing the automobile took his lane of the highway, in order to avoid a head-on collision he turned off the highway.

As to the matter of intoxication, two investigators, one of the sheriff's office, testified that at 8 o'clock, some three hours after the accident, the defendant was confused, incoherent and "obviously drunk;" the other said defendant

was coherent and that he the witness, understood him perfectly. Neither of these witnesses was at the scene of the mishap; and insofar as disclosed by the evidence did not see the defendant until the time indicated. There were other witnesses who were present at the incident who had opportunity to observe the conduct, condition, and behavior at the time. They were not asked about the matter and were in a position to offer the most competent evidence. The record fails to disclose any evidence of an unlawful act not amounting to a felony or any lawful act done in an unlawful manner, carelessly or negligently or without due caution or circumspection, that might result in death, having any causal connection with the death of the deceased or as being the probable or proximate cause thereof. It was just an accident with unfortunate results.

The court admitted in evidence a bottle of whiskey found some distance from the highway in a beet field bearing the same brand as that shown to have been purchased by or upon defendant's permit. This bottle was not found until Tuesday following the accident. The accident occurred the Saturday preceding. There was no connection shown between defendant and the bottle of whiskey received in evidence. Even if it were the bottle purchased at Pleasant Grove it was not shown that it was ever in possession of defendant. It was shown that he never drank any from it if it were the same bottle. This was prejudicial error to admit the bottle of whiskey in evidence as an exhibit.

There being prejudicial error and failure of evidence to support the verdict, the judgment is set aside and the cause remanded to the trial court to proceed or dismiss the cause as the issues may dictate.

LARSON, and PRATT, JJ., concur.

WOLFE, Justice (concurring in the result).

I cannot agree that the challenge against the venireman for cause, should have been allowed as a matter of law in

this case. He stated honestly and reasonably to the effect that if the drinking was related in any way to the accident he would be prejudiced. It is plain that he meant "influenced," and well he might be, for it would be a disingenuous and unworthy juror who would not be affected or influenced by the proof of the fact that drinking played its part in the accident. He stated that notwithstanding that the driver had taken drinks, that would not prejudice him in the real question as to whether he had been guilty of driving in violation of law. In view of Sec. 105-31-21, R. S. U. 1933, the court did not abuse its direction in concluding that the venireman would act with entire impartiality. Frankness in giving vent to anything from which the state of mind of the venireman can be inferred, should be encouraged and not discouraged. The intelligent, responsive venireman will, on questioning, try to appraise his state of mind dispassionately and then attempt to convey an honest revelation of it. If it appears that he is honest and that he has the mental reactions which are normal to the questions, further inquiry should be made to determine whether such mental state is one precluding impartiality, and if it appear that he is capable of arriving at an impartial and fair verdict despite his opinions regarding the actions of the defendant as related to the controversy, he should not be excused for cause. This was a case where the court's discretion was particularly apropos. Cases cited by the appellant where the review court held that the court properly excused a juror for cause, exemplified by *State* v. *Huffman,* 89 Mont. 194, 296 P. 789, are illustrative of this.

I think there is sufficient evidence to go to the jury as to the condition of the driver at the time of the accident. There was evidence of the drunken condition of the driver three hours after the accident, plus evidence that he had been drinking during the journey. From such evidence it might reasonably be inferred that his driving off the road was due to his condition and to the fact that the drinking impaired his ability to operate the truck in an ordinarily

careful manner. Where the testimony is that two bottles of hard liquor were bought en route and at least one bottle consumed, in which consumption the driver shared in generous quantity at a time not too remote before the accident, plus evidence that he had partaken of beer, together with a controversion of the only assigned reason given by the driver for his driving off the road, we have sufficient evidence from which it can be inferred that the driving off the road was due to lack of control caused by intoxication. Public policy in regard to drinking while charged with the highly responsible duty of operating a car, or of operating a car while under the telling influence of liquor, demands that the courts do not become too strict in the requirements of direct evidence to prove that a condition of impairment of powers existed which was itself the cause of the accident. There was enough here to make a prima facie case. The whole picture presented is one of a driver who had picked up young boys and then with his companion in the front seat exhibited a marked disregard for the responsibilities which he assumed, by drinking capriciously while driving.

I think the bottle was properly admitted in evidence. The evidence was that two bottles of whiskey of the same size and brand were purchased that day; that a witness immediately after the accident saw on the ground a bottle of that size and of that brand; three days later a deputy sheriff picked up a bottle of the same size and brand at the point where the witness had seen it. There was sufficient connection between these events in respect to the bottle testified to by the witnesses, to make the bottle admissible. Evidence is in the last analysis, a matter of relative probabilities. While there appears to be little added to the evidence of the bottle by introducing the bottle itself, it is corroborative, and the probability that the bottle found near the scene of the accident was the bottle in the hands of the driver and his companion in the cab of the truck, is established with sufficient probability to make it admissible in evidence.

: The more bothersome assignments of error relate to the instructions as to speed. As stated by the opinion, the speed of 35 or 40 miles per hour taken by itself, at the particular point where the accident occurred, might not be negligence. An examination of the information, however, shows that the manslaughter was charged in the general terms as follows: "that Chealey did unlawfully and without malice kill," etc. There was no bill of particulars. This opened up to the prosecution any act of unlawfulness done without malice, which resulted in the death. The evidence as to unlawfullness on the part of the state was as to the drinking, the lack of any obstruction on the highway and clear view for a mile and a half. No evidence was introduced by the prosecution regarding speed. Certainly where a driver has been drinking, a speed of 35 or 40 miles per hour may be unreasonable. The effect of the liquor may be such that travel at any rate may be unlawful. The case should have been put to the jury on the question of the proper control of the car. Speed might enter as an element in this determination. However, the instructions as to speed were prejudicial in that the jury could reasonably have inferred that there was involved in the case a question as to whether a speed of 35 or 40 miles per hour, under the circumstances, by itself constituted negligence. This is not a case in which speed is charged as negligence or even as a basis to show lack of control. Speed was introduced incidently by the defense to show generally that the defendant was driving carefully. Under these circumstances it should not have been singled out by the court and be made the basis of an instruction on the theory that it was unlawful conduct charged and proved. The jury was permitted to determine whether the speed so testified to was greater than reasonable and prudent under the circumstances on the theory that it was one of the separate bases of negligence.

This is not the case of *White* v. *Pinney*, 99 Utah 484, 108 P. 2d 249, where the instruction, not based on any evidence,

was one which could not possibly have deluded the jury into thinking that there was evidence in regard to the matter to which the instruction referred.

I must, therefore, concur in the reversal.

McDONOUGH, Justice.

I concur in the views expressed by Mr. Justice WOLFE in his concurring opinion.