**STATE of Utah, Plaintiff and Respondent,**

v.

**Richard BALL, Defendant and Appellant.**

No. 18935.

Supreme Court of Utah.

July 16, 1984.

J. Franklin Allred, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Bruce M. Hale, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

DURHAM, Justice.

The appellant Richard Ball was convicted of driving under the influence of alcohol by a jury in the Fifth Circuit Court in Salt Lake County. His conviction was affirmed on appeal to the Third Judicial District.

On appeal, Ball raises five points, only two of which involve constitutional issues that may be reviewed by this Court. *State v. Taylor*, Utah, 664 P.2d 439 (1983). The first question is whether the circuit court judge erred in restricting defense counsel's questioning of prospective jurors on voir dire. The second is whether evidence of the results of field sobriety tests performed by the defendant in the absence of a *Miranda* warning should have been suppressed in order to preserve his privilege against self-incrimination under the Utah constitution. We reverse on the first ground and remand for a new trial.

During voir dire the trial judge asked the veniremen whether any of them had "prejudices against people that drink." None responded that they did. Defense counsel later asked the veniremen whether any of them chose "not to drink for any reason." Four veniremen responded that they did not drink. The following exchange then occurred:

> Mr. Allred: May we inquire of [the four jurors who indicated they do not drink] whether that is for a personal conviction or a religious one?
>
> The Court: I don't—I don't think that's proper to ask. They say they choose not to drink, and I think that's sufficient.
>
> Mr. Allred: May we inquire of the four of them whether that predisposition or attitude about alcohol—
>
> The Court: I don't think those questions are proper, Counsel, and I never ask them. You're entitled to know those that drink and not drink, the reasons for doing so is [sic] personal and in fact, there is some question about whether that comes within the Constitution as to religious convictions and disqualification, because of that, so I don't ask the questions.
>
> . . . .
>
> I won't ask questions in that area. I never have, sir, and I just won't. I think it's something that's precluded by the State Constitution.

Mr. Allred: May the record indicate that it would have been my intention to pursue those individual beliefs to attempt to uncover any bias or prejudice based solely on the use or non-use of alcohol?

Defense counsel was able to eliminate three of the four teetotaling jurors by exercising all of his three peremptory challenges. The fourth, however, sat on the jury that convicted the defendant.

Article I, § 4 of the Utah constitution states in pertinent part: "The rights of conscience shall never be infringed ... nor shall any person be incompetent as a ... juror on account of religious belief or the absence thereof." We must decide whether this provision of the Utah constitution prohibits asking a prospective juror whether his abstention from alcohol is based on "personal or religious" grounds.

■ The question of whether the juror's abstention was "for a personal conviction or a religious one" has only a minimal relationship to the constitutional language regarding incompetence of jurors because of "religious belief or the absence thereof." The mere asking of the question has nothing to do with competence to serve, that is, with a juror's basic qualifications to participate in a panel. Age (in adults), gender and occupation likewise may not be used to render an individual incompetent as a prospective juror, but an exploration of the attitudes and convictions that may exist in a person who belongs to those groups is certainly permissible to aid in discovering actual bias or prejudice relating to the subject matter of a particular case. For example, an individual could not be challenged for cause and eliminated from a jury panel on the basis of race. But if his attitudes in a criminal prosecution, which were related to his experiences respecting race, were such as to preclude him from acting impartially, a challenge would lie. Religious beliefs, unlike gender or race, are not readily apparent, and their existence, if directly related to the subject matter of the suit (as they may be in a case involving alcohol consumption), must be determined by preliminary inquiry. Should those religious beliefs (or the absence thereof) be the basis for *actual* bias, prejudice, or impartiality, a challenge for cause would likewise lie. In that event, an individual would not be declared "incompetent ... on account of religious belief" in violation of the constitution, but rather unfit to serve in a particular cause because of actual prejudice. The fact that actual bias or prejudice is related in some way to an individual's religious beliefs does not preclude exclusion for demonstrated inability to serve as an impartial juror. To declare otherwise would be to subordinate the rights of a criminal defendant to receive a fair trial before an impartial jury to the rights to serve as jurors of persons prejudiced by their religion (or irreligion) against certain defendants or behavior. Such a conflict between constitutional values is not required by the language of art. I, § 4.

Our constitution is not unique; its substance is contained in the constitutions of several other states. Article I, § 4 of the California constitution stated:

[N]o person shall be rendered incompetent to be a ... juror on account of his opinions on matters of religious belief.

(1879, amended 1974. Amended provision reads: "A person is not incompetent to be a witness or juror because of his or her opinions on religious beliefs.")

■ In *People v. Rollins*, Cal., 179 Cal. 793, 179 P. 209 (1919), the appellant argued that a section of the California Penal Code, which prescribed "conscientious opinions" as grounds for challenge for implied bias in a capital case, violated the above-quoted language of the California constitution. The California Supreme Court saw no merit in this argument and explained the meaning of the constitutional language:

All that the provision quoted means is that a person called as witness or juror "is competent without any respect to his religious sentiments or convictions; the law leaving this matter of competency to legal sanctions or, at least, to considerations independent of religious sentiments or convictions." In other words, he may not be debarred as a witness or juror

because of his religious faith, and that element must be disregarded in determining his "competency."

*Id.* at 796–97, 179 P. at 210 (citation omitted). *Cf. Smith v. Smith,* 7 Cal.App.2d 271, 46 P.2d 232 (1935).[1] Thus the question of one's competence for jury service generally is a separate question from the issue of one's potential lack of impartiality in a particular case.

■ The State argues in this case that, since no jurors had earlier indicated that they had any biases or prejudices in response to the court's general inquiry on that question, the defendant's question was superfluous. That position suggests an unwarranted naivety regarding human nature. The most characteristic feature of prejudice is its inability to recognize itself. It is unrealistic to expect that any but the most sensitive and thoughtful jurors (frequently those least likely to be biased) will have the personal insight, candor and openness to raise their hands in court and declare themselves biased. Voir dire is intended to provide a tool for counsel and the court to carefully and skillfully determine, by inquiry, whether biases and prejudices, latent as well as acknowledged, will interfere with a fair trial if a particular juror serves in it.

The ruling at issue here also reflects inadequate deference to the function of peremptory challenges in our system of jury trials. In *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the Supreme Court said that the peremptory challenge

> is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, *religion,* nationality, occupation or affiliations of people summoned for jury duty.... [T]he question a prosecutor or defense counsel must decide is not whether a juror of a particular race or nationality is in fact partial, but whether one from a different group is less likely to be.... Hence veniremen ... are challenged in light of the limited knowledge counsel has of them, *which may include their group affiliations, in the context of the case to be tried.*

*Id.* at 220–21, 85 S.Ct. at 836 (citations and footnotes omitted) (emphasis added).

The extreme deference afforded in *Swain* to the unfettered exercise of such challenges has been criticized by some as permitting improper exclusion of groups classified on constitutionally impermissible grounds, specifically race,[2] but the Su-

1. Similarly, the Oregon constitution states: "No person shall be rendered incompetent as a ... juror in consequence of his opinions on matters of religeon [sic] ...." Article I, § 6. In *State v. Barnett,* 251 Or. 234, 236, 445 P.2d 124, 125 (1968), the appellant, after a conviction for abortion, appealed the trial court's ruling prohibiting her counsel from asking prospective jurors during voir dire what their religious faith was. She contended that she had "a right to know any information about the veniremen that could possibly cause them to be prejudiced and that such information is vital to her making intelligent peremptory challenges. There is a widely accepted belief that certain religious faiths feel more strongly about abortion than do others." Without addressing the issue of whether a venireman's answer as to his religious belief "might render him incompetent to act as a juror and subject him to challenge for cause," the court held that the trial court erred in not permitting the defendant to ask the prospective jurors their religious faiths. *Id.* The Missouri constitution states that "no person shall, on account of his religious persuasion or belief ... be disqualified from ... serving as a juror." Arti-

cle I, § 5. In *State v. Wilson,* Mo.App., 554 S.W.2d 511, 513 (1977), the court, without passing on the constitutional issue, approved as "a proper effort to ascertain any preconceptions or predispositions on the part of the veniremen which might prevent an open minded consideration of the case" the question of whether the veniremen had "any moral, religious or conscientious scruples which would make it difficult or prejudice you ... to sit and render a judgment against your fellow man." The Idaho constitution states that "no person shall be denied any civil or political right, privilege or capacity on account of his religious opinions." Article I, § 4. *See* the result in *State v. Miller,* 60 Idaho 79, 88 P.2d 526 (1939), discussed below.

2. *See, e.g.,* the following articles referenced in *People v. Wheeler,* 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 n. 19 (1978): Note, *Racial Discrimination in Jury Selection,* 41 Albany L.Rev. 623 (1977); Comment, *The Prosecutor's Exercise of the Peremptory Challenge to Exclude Nonwhite Jurors: A Valued Common Law Privilege in Conflict With the Equal Protection*

preme Court has declined recently to review *Swain* in the context of allegations of minority exclusion from juries. *See Davis v. Illinois,* 464 U.S. ——, 104 S.Ct. 986, 79 L.Ed.2d 222 (1984), *reh'g denied,* —— U.S. ——, 104 S.Ct. 1017, 79 L.Ed.2d 247 (1984) (No. 82–6729). Several state courts have expressed the view that caution must be exercised to prevent the use of peremptory challenges to accomplish covertly what cannot be done overtly, namely, the denial of equal protection to groups of prospective jurors and of cross-sectionalism of juries to criminal defendants. *People v. Wheeler,* 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978); *State v. Crespin,* 94 N.M. 486, 612 P.2d 716 (1980). *See also McCray v. Abrams,* 576 F.Supp. 1244 (E.D.N.Y.1983). That caution is appropriate and most certainly formed part of the motivation for the language in our constitution excluding religious beliefs or the lack thereof as a ground for disqualification of jurors. We agree with the California Supreme Court, which said:

> In practice, a party will use a peremptory challenge only when he believes that the juror he removes may be consciously or unconsciously biased against him, or that his successor may be less biased.
>
> To say that peremptories will ordinarily be exercised only in cases of bias, however, does not clarify the kinds of bias upon which the challenge may permissibly be based. In contrast to the limited list of events authorizing a challenge for cause on the ground of implied bias (Pen.Code, § 1074), the law recognizes that a peremptory challenge may be predicated on a broad spectrum of evidence suggestive of juror partiality. The evidence may range from the obviously serious to the apparently trivial, from the virtually certain to the highly speculative.
>
> . . . .

By contrast, when a party presumes that certain jurors are biased merely because they are members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds—we may call this "group bias"—and peremptorily strikes all such persons for that reason alone, he not only upsets the demographic balance of the venire but frustrates the primary purpose of the representative cross-section requirement. That purpose, as we have seen is to achieve an overall impartiality by allowing the interaction of the diverse beliefs and values the jurors bring from their group experiences. Manifestly if jurors are struck simply because they may hold those very beliefs, such interaction becomes impossible and the jury will be dominated by the conscious or unconscious prejudices of the majority. Seen in this light, the presumed group bias that triggered the peremptory challenges against its members is indistinguishable from the group perspective we seek to encourage by the cross-section rule.

*People v. Wheeler,* 148 Cal.Rptr. at 901–03, 583 P.2d at 760–61 (footnotes omitted).

■ Properly utilized, however, it may be seen that the peremptory challenge performs a valuable function in our jury system. Its efficacy is necessarily vitiated when a party is not permitted to gather enough information from prospective jurors in order to exercise his right intelligently. In *State v. Taylor,* Utah, 664 P.2d 439, 447 (1983), we emphasized that "voir dire examination has as its proper purposes both the detection of actual bias and the collection of data to permit informed exercise of the peremptory challenge" (citations omitted). We view the question asked here by defense counsel as being reasonably calculated to discover any latent bias that may have existed among the four veniremen who stated that they did not drink;

*Clause,* 46 U.Cin.L.Rev. 554 (1977); Comment, *A Case Study of the Peremptory Challenge: A Subtle Strike at Equal Protection and Due Process,* 18 St. Louis U.L.J. 662 (1974); Note, *Peremptory Challenge—Systematic Exclusion of Prospective Jurors on the Basis of Race,* 39 Miss.L.J. 157

(1967); Comment, *Swain v. Alabama: A Constitutional Blueprint for the Perpetuation of the All-White Jury,* 52 Va.L.Rev. 1157, 1173–75 (1966); *cf.* LaRue, *A Jury of One's Peers,* 33 Wash. & Lee L.Rev. 841 (1976); Note, *The Case for Black Juries,* 79 Yale L.J. 531 (1970).

the information sought, even if it would not have supported a challenge for cause, would have allowed defense counsel to exercise his peremptory challenges more intelligently. The Supreme Court of Idaho made this same point in a review of a conviction for driving under the influence:

> We do think ... it was error for the trial court to sustain the objections to the questions propounded to the jurymen with reference to their "prejudice against a man who may take a drink of intoxicating liquor" and with reference to any religious prejudices they might entertain.... [T]he answer would necessarily have afforded counsel information which might have enabled him to more intelligently exercise his peremptory challenges.

*State v. Miller,* 60 Idaho 79, 82–83, 88 P.2d 526, 527 (1939). *Accord United States v. Ible,* 630 F.2d 389, 394–95 (5th Cir.1980).

It requires little imagination to understand why defense counsel may have wanted to know whether the veniremen who abstained from drink did so for religious reasons or personal ones. For example, a person who does not drink alcohol for medical reasons peculiar to himself may nevertheless see nothing wrong in the drinking of alcohol by those about him. But a person who abstains from alcohol out of a religious conviction that it is sinful, unhealthy or unwise may be more likely to think ill of all who do drink. Of course it does not follow that the person who abstains from alcohol for religious or moral reasons will therefore necessarily be unable to act as a fair and impartial juror in a trial for driving under the influence of alcohol. It does, however, follow that a defense attorney may, from a similar analysis, conclude that one person is generally less impartial than another. It is to allow such decisions to be informed that a party must be allowed to gather sufficient relevant information during voir dire.

■■ The gathering of sufficient relevant information must, of course, be pursued with a sensitivity to the privacy of the potential juror. The criminal defendant's right to a fair trial does not create a license in his defense counsel to conduct an inquisition into the private beliefs and experiences of a venireman. The trial judge, in his broad discretionary power to conduct voir dire, *State v. Malmrose,* Utah, 649 P.2d 56, 60 (1982), *Maltby v. Cox Construction Co.,* Utah, 598 P.2d 336, 341 (1979), has a duty to protect juror privacy. To this end the trial judge may even conduct a portion of voir dire in chambers where the circumstances merit. *See Press-Enterprise Co. v. Superior Court of California,* —— U.S. ——, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). However, an issue of juror privacy does not exist on the facts of this case. The mere revelation of the general fact that a religious belief is the basis of a practice, without a further probing of the nature or extent of any particular religious belief, does not result in any injury to the juror. Any harmless disturbance of a juror's privacy that may occur through the revelation of such general information is outweighed by its close relevance to the possibility of bias in the context of a trial for driving under the influence of alcohol.

■■ We hold that asking a venireman whether his abstention from the drinking of alcohol has a religious basis is not prohibited by the Utah constitution.[3] We also hold that the failure of the court to permit counsel's inquiry was not only error, but also, inasmuch as one of the jurors in question actually sat on the panel that convicted defendant, prejudicial error.

We stress that we do not examine the scope of permissible grounds for a challenge for cause relating to claimed bias solely by reason of a person's adherence to specific religious beliefs, as that question is not before us. We only hold that a question as to the existence of a religious

---

**3.** We note that in *State v. Chealey,* 100 Utah 423, 426–27, 116 P.2d 377, 378–79 (1941), an appeal of a conviction for involuntary manslaughter, this Court implicitly approved counsel's voir dire question of "whether any juror had any prejudice in or of itself to a man taking a drink or any religious scruples against it."

ground for a venireman's abstention from alcohol was not prohibited by the Utah constitution and should have been allowed.

The appellant's second claim is that his constitutional right against self-incrimination under the Utah constitution (art. I, § 12) was violated when the arresting officer failed to give him a *Miranda* warning before administering field sobriety tests. The appellant's brief was submitted before we decided *Salt Lake City v. Carner,* Utah, 664 P.2d 1168 (1983). *Carner* may well be dispositive of appellant's claim, but we decline to treat that claim because of threshold issues not briefed in this case or raised in *Carner,* namely whether the definition of "custodial interrogation" is the same under the Utah constitution as it is under the federal and whether a Miranda-type warning is even required under our state constitution. Since the right against self-incrimination claimed in this particular case can arise only under the language of the Utah constitution, *Hansen v. Owens,* Utah, 619 P.2d 315 (1980), and has no counterpart in the federal fifth amendment, these questions deserve thorough treatment by counsel and careful consideration by the Court. Inasmuch as we reverse on other grounds and these questions have not been raised or briefed by the parties, we decline to rule on them at this time.

Based on our holding that the circuit court misconstrued art. I, § 4 of the Utah constitution and that the defendant was prejudiced thereby, we vacate his conviction and remand this case for a new trial.

HALL, C.J., and STEWART and HOWE, JJ., concur.

OAKS, J., having resigned, does not participate herein.