**James HORNSBY, Plaintiff and Appellant,**

v.

**CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER–DAY SAINTS, a Utah corporation sole, Charles Giblett, John Sutton, and John Does I through X, inclusive, Defendants and Respondents.**

No. 880031–CA.

Court of Appeals of Utah.

July 26, 1988.

Mary A. Rudolph, Laura L. Boyer, James R. Black (argued), Black & Moore, Salt Lake City, for Hornsby.

Stephen G. Morgan (argued), Morgan, Scalley & Reading, Salt Lake City, for Sutton.

Allen M. Swan (argued), Kirton, McConkie & Bushnell, Salt Lake City, for LDS Church.

Before BENCH, BILLINGS and JACKSON, JJ.

## OPINION

BENCH, Judge:

Plaintiff appeals from a judgment of no cause of action entered on a special jury verdict. Because the trial court improperly limited voir dire of the jury panel, we vacate the judgment and remand the case for a new trial.

On March 30, 1983, defendants Charles Giblett, a farmer for defendant Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints (L.D.S. Church), and John Sutton were attempting to load into a horse trailer two cows owned by the L.D.S. Church. Approximately one month earlier, the two cows had crossed the fences separating Sutton's property and the L.D.S. Church's welfare farm located immediately northwest of Sutton's property. Sutton and Giblett had agreed to delay retrieving the cows to avoid disturbing Sutton's cattle.

On March 30, Sutton opened his corral gate and backed his trailer into the opening. He and Giblett then attached the gate to the trailer with baling wire and a hook. As the two men attempted to herd the cows into the trailer, one cow entered the trailer, but the other cow threw its weight against the gate, dislodging it from the trailer. The cow exited the corral and entered a large field owned by Kennecott Corporation. For the next hour, Sutton and Giblett, assisted by Sutton's daughter Mary and two boys, attempted to direct the errant cow back onto Sutton's property. Sutton and Mary drove in separate vehicles with emergency lights flashing, trying to locate the cow. Mary parked and exited her car in a further attempt to locate the cow. When she spotted the cow, she returned to her car.

At that moment, plaintiff James Hornsby, an employee of Kennecott, was driving home on his motorcycle. He noticed Mary waving her arms at him, but considered her waving to be a greeting, not a warning. Approximately 200 feet past Mary and her

car, the cow darted out onto the road. Unable to avoid the cow, Hornsby laid his motorcycle down on the road and suffered serious injuries.

Hornsby filed this action for damages, alleging negligence on the part of defendants. In response to special interrogatories, the jury found no negligence on the part of any of the defendants but determined plaintiff was negligent and his negligence was the proximate cause of his injuries. The trial court entered judgment on the verdict in favor of defendants.

On appeal, Hornsby alleges the trial court erred in refusing to voir dire members of the jury panel concerning their affiliation with the L.D.S. Church. At the time of voir dire, Hornsby proposed the following questions, among others, to the trial court:

Are any of you members of the L.D.S. Church?

Would that, in any way, affect your ability to evaluate the evidence in this case and render a fair decision for the plaintiff?

Did any of you hold a position in the L.D.S. Church such as Bishop or presiding officer or counselor?

Which stake was that in? Where is that located? [1]

Would that position affect you in making a fair decision in this case?

If the evidence were favorable to the plaintiff in this case, would you have a problem in awarding a judgment against the L.D.S. Church?

The trial court rejected Hornsby's proposed questions, later explaining "it's none of this Court's business, or anybody's business what [jurors'] religious preferences are." The court then asked:

Are there any of you who feel that you would have trouble being an impartial juror because of feelings you may have either pro or con with regard to the L.D.S. Church that you think might af-

---

1. A stake is a geographical unit in the L.D.S. Church. In his appellate brief, Hornsby also claims he should have been allowed to ask whether any juror attended the Oquirrh Stake

from where the cow came, whether any of them held positions in that stake, and whether any of them ever volunteered at the subject farm or knew anyone who had or did.

fect your ability to be a fair and impartial juror in this case? If so, I'd like you to raise your hand.

The court stated for the record that all members of the panel had indicated religious feelings would have no effect on their decision.

Hornsby argues the trial court erred in limiting voir dire regarding the jury panel's religious affiliations. The L.D.S. Church contends where religious doctrine or practices are not at issue, it is not proper for a court to inquire as to a juror's religious affiliation. The scope of voir dire is a matter within the sound discretion of the trial court, and its rulings with respect thereto will not be disturbed on appeal absent a demonstrated abuse of discretion. *Maltby v. Cox Constr. Co., Inc.*, 598 P.2d 336 (Utah 1979), *cert. denied*, 444 U.S. 945, 100 S.Ct. 306, 62 L.Ed.2d 314 (1979). The trial court abuses its discretion when, "considering the totality of the questioning, counsel [is not] afforded an adequate opportunity to gain the information necessary to evaluate jurors." *State v. Bishop*, 753 P.2d 439, 448 (Utah 1988).

Voir dire has as one of its purposes the detection of bias sufficient to challenge a prospective juror for cause. *State v. Taylor*, 664 P.2d 439 (Utah 1983). Under Utah R.Civ.P. 47(f), a prospective juror may be challenged for cause on any of the following grounds:

(1) A want of any of the qualifications prescribed by law to render a person competent as a juror.

(2) Consanguinity or affinity within the fourth degree to either party, or to an officer of a corporation that is a party.

(3) Standing in the relation of debtor and creditor, guardian and ward, master and servant, employer and employee or principal and agent, to either party, or united in business with either party, or being on any bond or obligation for either party; provided, that the relationship of debtor and creditor shall be deemed not to exist between a municipality and a resident thereof indebted to such municipality by reason of a tax, license fee, or service charge for water power, light or other services rendered to such resident.

(4) Having served as a juror, or having been a witness, on a previous trial between the same parties for the same cause of action, or being then a witness therein.

(5) Pecuniary interest on the part of the juror in the result of the action, or in the main question involved in the action, except his interest as a member or citizen of a municipal corporation.

(6) That a state of mind exists on the part of the juror with reference to the cause, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging; but no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon public rumor, statements in public journals or common notoriety, if it satisfactorily appears to the court that the juror can and will, notwithstanding such opinion, act impartially and fairly upon the matter to be submitted to him.

We believe the question asked by the trial court was sufficient to detect any actual subjective bias to warrant a challenge for cause under subsection (6). Because it is not necessary to this appeal, we do not decide whether the voir dire was sufficient to reveal circumstances or relationships that would warrant challenges for cause under other subsections of Rule 47(f).

A second proper purpose for voir dire is "the collection of data to permit informed exercise of the peremptory challenge." *Taylor*, 664 P.2d at 447. Regarding peremptory challenges, the United States Supreme Court has held:

The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control. While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality

that is less easily designated or demonstrable.

*Swain v. Alabama,* 380 U.S. 202, 220, 85 S.Ct. 824, 836, 13 L.Ed.2d 759 (1965) (citations omitted). A prospective juror's group affiliations is a common and proper topic for voir dire and ground for a peremptory challenge. As the *Swain* Court continued:

> [A peremptory challenge] is often exercised ... upon a juror's "habits and associations".... It is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, *religion,* nationality, occupation or affiliations of people summoned for jury duty.

*Id.* (quoting *Hayes v. Missouri,* 120 U.S. 68, 70, 7 S.Ct. 350, 351, 30 L.Ed. 578 (1887)) (emphasis added).

The issue of religion as a topic for voir dire was addressed in *State v. Ball,* 685 P.2d 1055 (Utah 1984). In *Ball,* defendant was charged with driving under the influence of alcohol. During voir dire, the trial court asked the jury panel whether any of them had prejudices against people that drink. None indicated they did. Defendant then asked if any of them chose not to drink for any reason. Four jurors responded they did not drink. Defendant then proposed to the trial court to ask if those jurors' choice not to drink was for a personal or a religious conviction. The trial court, concerned with constitutional protections, denied defendant's request. Defendant was able to eliminate three of the four non-drinking jurors by exercising all of his peremptory challenges, but the fourth sat on the jury which convicted him.

On appeal, the Utah Supreme Court held defendant's question as to the four jurors' reasons for their non-use of alcohol should have been allowed. The Court acknowledged the "extreme deference afforded in *Swain* to the unfettered exercise of [peremptory] challenges," and stated as follows:

> Religious beliefs, unlike gender or race, are not readily apparent, and their existence, if directly related to the subject

matter of the suit ... must be determined by preliminary inquiry.... Voir dire is intended to provide a tool for counsel and the court to carefully and skillfully determine, by inquiry, whether biases and prejudices, latent as well as acknowledged, will interfere with a fair trial if a particular juror serves in it.

*Id.* at 1057, 1058.

■ Both *Swain* and *Ball* recognize there are cases where religion and group affiliation are appropriate topics for voir dire. In the instant case, defendant did not propose to question the prospective jurors as to their specific beliefs.[2] Rather, as the L.D.S. Church was one of the parties, defendant merely proposed to question the jurors regarding their affiliation with the L.D.S. Church. Whenever a religious organization is a party to the litigation, voir dire regarding the jury panel's religious affiliations is proper. *State v. Via,* 146 Ariz. 108, 704 P.2d 238 (1985); *Coleman v. United States,* 379 A.2d 951 (D.C.1977); *Casey v. Roman Catholic Archbishop of Baltimore,* 217 Md. 595, 143 A.2d 627 (1958).

■ Substantial impairment of the right to informed exercise of peremptory challenges is reversible error. *Swain,* 380 U.S. at 219, 85 S.Ct. at 835; *Ball,* 685 P.2d at 1060. In the instant case, the trial court abused its discretion in denying voir dire regarding the prospective jurors' affiliation with the L.D.S. Church. The scope of voir dire should be sufficiently broad to allow the parties intelligently to exercise their peremptory challenges. In so holding, we do not require the trial court to propound the precise questions proposed by Hornsby. Rather, we leave intact the considerable discretion afforded to trial courts to contain voir dire within reasonable limits. *See Ball,* 685 P.2d at 1060 (trial court has a duty to protect juror privacy); *People v. Williams,* 29 Cal.3d 392, 628 P.2d 869, 174 Cal.Rptr. 317 (1981) (trial court should not permit inordinately extensive and unfocused questioning). The judgment in favor

---

2. The religious beliefs of the prospective jurors are not directly related to the subject matter of this suit, and hence could not properly be examined during voir dire.

of defendants is vacated and the case is remanded for a new trial.[3]

In light of our decision to remand for a new trial, it is not necessary to discuss Hornsby's other alleged errors. However, since the trial court may be faced with the same issues on remand, we make the following observations. *See State v. Hansen,* 734 P.2d 421, 428 (Utah 1986).

■ Hornsby argues defendants' use of the term "welfare" when referring to the farm owned by the L.D.S. Church improperly biased the jury in their favor and was in violation of a court order. We fail to find any merit in Hornsby's contention. The subject property is commonly referred to as a welfare farm. Hornsby offers no evidence of improper bias other than mere speculation. Furthermore, Hornsby fails to cite to any record evidence of a court order regarding the use of the term "welfare."

Hornsby also argues the trial court erred in refusing to instruct the jury on res ipsa loquitur, negligence per se, and strict liability. "A party is entitled to have the jury instructed on his theories of the case and points of law provided competent evidence is presented to support them." *Steele v. Breinholt,* 747 P.2d 433, 435 (Utah App. 1987). We will reverse a trial court's judgment for failure to give a requested instruction only if the jury is prejudicially misled or insufficiently or erroneously advised on the law. *Id.*

■ To warrant a res ipsa loquitur instruction, a plaintiff must show: 1) the accident was one which ordinarily does not happen but for someone's negligence; 2) plaintiff's own use or operation of the agency or instrumentality was not primarily responsible for the injury; and 3) the agency or instrumentality causing the injury was within defendant's exclusive control and management. *Roylance v. Rowe,* 737 P.2d 232, 235 (Utah App.1987). Hornsby claims the evidence in the instant case es-

tablishes the three required elements for a res ipsa loquitur instruction. However, application of res ipsa loquitur presupposes a plaintiff's inability to point to the specific allegedly negligent act which caused the injury. *Kusy v. K-Mart Apparel Fashion Corp.,* 681 P.2d 1232 (Utah 1984). If the "evidence in the case reveals all of the facts and circumstances of the occurrence and clearly establishes the precise allegedly negligent act which is the cause of plaintiff's injury," then res ipsa loquitur is not applicable. *Roylance,* 737 P.2d at 235.

In the instant case, the evidence presented at trial described and established the act committed by Giblett and Sutton which Hornsby alleges to be negligent. Defendants backed the horse trailer into the corral gate opening. They then attached the rear doors of the trailer to the gate with baling wire. As they attempted to load the cows into the trailer, one of the cows threw its weight against the gate, dislodging it from the trailer. The cow escaped through the opening. As the allegedly negligent act was clear from the evidence, res ipsa loquitur was not applicable.

■ The trial court also refused Hornsby's requested instruction on negligence per se. Violation of a statute or ordinance is negligence per se. *Jorgensen v. Issa,* 739 P.2d 80 (Utah App.1987). Hornsby argues defendants violated Salt Lake County Ordinances § 10–10–3 (1966) (now § 14.20.050 (1986)), which states:

Every person staking, tethering, herding, grazing or pasturing, or allowing to run at large or causing to be staked, tethered, herded, grazed or pastured, or allowed to run at large, any horse, cow, mule, sheep, goat or swine, or other animal upon any of the public highways of the county shall be guilty of a misdemeanor.

Defendants' conduct was not in violation of section 10–10–3. They were not staking, tethering, herding, grazing, or pasturing

---

**3.** Defendants John and Mary Sutton argue any potential prejudice in favor of the L.D.S. Church caused by the trial court's error did not affect the jury's finding as to their lack of negligence. However, in view of the overlapping nature of the possible liabilities, justice requires a new trial as to all defendants. *See Kord's Ambulance Serv., Inc. v. White,* 14 Ariz. App. 294, 482 P.2d 903 (1971).

the errant cow under the common definitions of those terms. Nor did defendants "allow" the cow to run at large. *See Santanello v. Cooper,* 106 Ariz. 262, 475 P.2d 246 (1970) ("allow" means to sanction, permit, acknowledge, approve of).

In any event, section 10–10–3 must be construed in light of Utah Code Ann. § 41–6–38(3) (1987), which states:

> In any civil action brought by the owner, operator, or occupant of a motor vehicle ... for damages caused by collision with any domestic animal or animals on a highway, there is no presumption that the collision was due to negligence on behalf of the owner or the person in possession of livestock.

Utah Code Ann. § 41–6–16 (1987) provides:

> The provisions of this chapter are applicable and uniform throughout this state and in all of its political subdivisions and municipalities. A local authority may not enact or enforce any rule or ordinance in conflict with the provisions of this chapter. Local authorities may, however, adopt ordinances consistent with this chapter, and additional traffic ordinances which are not in conflict with this chapter.

The trial court's refusal of Hornsby's requested negligence per se instruction was correct.

■ Finally, Hornsby contends the court erred in refusing to instruct the jury on strict liability. Hornsby claims the cow had a dangerous or vicious tendency known to defendants. Nothing in the record supports his assertion. The court's refusal to give the instruction was therefore justified.

BILLINGS, J., concurs.

JACKSON, J., concurs in the result.