STATE of Utah, Plaintiff and Appellee,

v.

Cory L. BROOKS, Defendant
and Appellant.

No. 920853–CA.

Court of Appeals of Utah.

Jan. 12, 1994.

Elizabeth Holbrook (argued), Ronald S. Fujino, Legal Defender Ass'n, Salt Lake City, for appellant.

Jan Graham, State Atty. Gen., J. Kevin Murphy (argued), Asst. Atty. Gen., Salt Lake City, for appellee.

Before BENCH, RUSSON and GARFF,[1] JJ.

## AMENDED OPINION[2]

BENCH, Judge:

Cory L. Brooks appeals his conviction for aggravated robbery, a first degree felony in violation of Utah Code Ann. § 76–6–302 (1990), and aggravated burglary, a first degree felony in violation of Utah Code Ann.

§ 76–6–203 (1990). Defendant alleges that the trial court erred by not removing for cause certain jurors, that his trial counsel was ineffective, and that he is being illegally punished twice for the same crime. We affirm.

## FACTS

Defendant responded to a newspaper advertisement placed by Stephanie Vert, offering for sale a distinctive diamond ring. Defendant examined the ring in the Vert's home, spending thirty to forty-five minutes with Stephanie and her mother, Martha Vert. Defendant indicated that he wished to purchase the ring and that he would return to their home the next morning for that purpose.

Stephanie was the only one home the next morning when defendant arrived. Stephanie invited defendant in and offered him some coffee. Defendant picked up the diamond ring and then pointed a pistol at Stephanie and ordered her to crawl into a bathroom. Defendant then produced handcuffs and ordered Stephanie to handcuff herself to plumbing beneath the sink. When Stephanie did not handcuff herself to defendant's satisfaction, he produced a set of keys and ordered her to recuff herself. He then threatened her by saying, "You better not remember what I look like."

Defendant spent ten to twelve minutes rummaging through the Vert's home. Using a walkie-talkie, he spoke to an apparent accomplice, arranging to be picked up outside the Vert's home. After defendant left, Stephanie freed herself by unscrewing the plumbing and then called for help. The Verts claimed that defendant stole several thousand dollars worth of jewelry, including the diamond ring, from their home.

Shortly after the robbery, defendant visited with friends and offered to sell them some jewelry, including a diamond ring. During this visit, defendant and his friends saw a television account of the Vert robbery. Defendant boasted that he was the one who had

**1.** Senior Judge Regnal W. Garff, acting pursuant to appointment under Utah Code Ann. § 78–3–24(10) (1992).

**2.** This amended opinion replaces the opinion in Case No. 920853–CA issued on October 29, 1993.

committed the robbery. Before defendant left, he gave his friends a chain taken from the Vert home. The friends subsequently called the police and turned the chain over to them. Martha Vert later identified the chain as one of the items stolen from her home.

Stephanie gave an accurate description of defendant the day of the robbery, and later positively identified defendant from a photo array. Several months after the crime, she also positively identified defendant from a lineup. Martha Vert had difficulty identifying defendant from the photo array, but she independently identified him from the lineup as the person who had come to her home and examined the ring the night before the robbery.

Defendant was charged with aggravated robbery, aggravated burglary, and possession of a dangerous weapon by a restricted person. Defendant's first trial ended in a mistrial due to a hung jury.

Prior to the second trial, the trial court conducted voir dire of prospective jurors. Initial voir dire by the trial court involved ascertaining whether prospective jurors had any acquaintance with the parties, court personnel, attorneys, or witnesses. The trial court then explained the charges, and determined that none of the prospective jurors had heard of the case against defendant.

The court then engaged in the following exchange:

THE COURT: Are there any of you who have any pressing or urgent business or personal matters over the next four days that would prevent you from providing satisfactory jury service over the next four days?

MR. BARBER: My name is Frank L. Barber.

THE COURT: Frank what?

MR. BARBER: Barber, B-a-r-b-e-r.

THE COURT: What is your problem?

MR. BARBER: Since I qualified for the jury list my wife has had knee surgery and I'm required to take her for therapy three times a week, Monday, Wednesdays and Fridays at 5:00 o'clock in Sandy.

THE COURT: Could other arrangements be made?

MR. BARBER: I have been unable to so far.

THE COURT: You are working on it?

MR. BARBER: Well, she has until—a week from today she goes in to the doctor to see if the therapy has been successful.

THE COURT: I understand. But the question was: Is there any other possibility to work out other arrangements?

MR. BARBER: I don't have anyone I could trust her with.

THE COURT: You haven't called the therapist to see if that could be moved back 20 or 30 minutes?

MR. BARBER: No I haven't.

THE COURT: Ordinarily, we are in recess. So, if you are selected, the Court would appreciate having you see if that—the time could be changed; and we'd recess in time enough to allow you to do that. Given that accommodation, do you feel that you could serve?

MR. BARBER: I am not sure that I could devote my undivided attention to the case under the circumstances.

THE COURT: Thank you.

Mr. Barber did not indicate that he would, in any way, be biased against either the defense or the prosecution.

The trial court also asked the prospective jurors whether they had ever been subjected to any assaults or threats, and whether any had been victim of a burglary. Several prospective jurors responded affirmatively. The trial court engaged in the following conversation with the prospective jurors who had responded affirmatively:

JUROR GEURTS: On two different occasions we've had somebody walk in our unlocked back door and take my purse.

THE COURT: Okay.

. . . .

JUROR HEAP: I've had—Daniel Heap. I've had my house broken into before, and our vehicles twice in the last couple of years.

THE COURT: Thank You.

JUROR PIKE: Larry Pike. As a child our home was burglarized when we were there.

THE COURT: Anyone else?

The court then addressed a series of four questions to ascertain whether the prospective jurors could try the case fairly and impartially. The court asked whether the prospective jurors would be willing to have their own guilt or innocence determined by people in the same frame of mind as the prospective jurors. The court also asked the prospective jurors whether, in their present state of mind, there was anything that would prevent them from acting fairly and impartially on the evidence presented without prejudicing the substantial rights of either party. None of the prospective jurors offered a response that would indicate bias.

Mrs. Geurts was questioned further in chambers because her husband had been a defense witness in a case prosecuted by the prosecutor in the instant case. The prosecutor also believed that he and Mrs. Geurts had attended the same church in the past. When questioned by defense counsel, Mrs. Geurts indicated that these factors would not affect her impartiality in hearing the case. Neither counsel moved to strike for cause prospective jurors Geurts, Heap, Pike, or Barber. Defense counsel used a peremptory challenge to remove Geurts. Heap, Pike, and Barber served on defendant's jury.

The jury found defendant guilty of aggravated robbery and aggravated burglary. Defendant was given concurrent sentences for each offense and ordered to pay fines and restitution. Because defendant used a pistol to commit the offenses, and because he was on parole when he committed them, the trial court found defendant guilty of possession of a dangerous weapon by a restricted person and his sentences were enhanced under the firearm enhancement statute. The sentences were imposed to run consecutively to another uncompleted sentence at the Utah State Prison.

**3.** Where defense counsel moves to strike jurors for cause, we review the trial court's ruling for an abuse of discretion. *State v. Gotschall*, 782

## ISSUES

Defendant argues, for the first time on appeal, that the trial court committed plain error by not removing for cause prospective jurors Geurts, Heap, Pike, and Barber. In the alternative, defendant argues that his trial counsel was constitutionally ineffective because he failed to request an adequate voir dire of the prospective jurors. Defendant also argues, for the first time on appeal, that his convictions for robbery and burglary illegally punish him twice for the same crime.

## STANDARDS OF REVIEW

At trial, defense counsel passed the jury for cause, without in any way objecting to prospective jurors Geurts, Heap, Pike, or Barber. Where, on appeal, defendant challenges the trial court's failure to remove prospective jurors and, at trial defense counsel did not move to strike the prospective jurors for cause, we utilize a "plain error" standard of review. *State v. Ellifritz*, 835 P.2d 170, 174 (Utah App.1992).[3] The requirements for determining whether plain error has occurred were articulated in *State v. Eldredge*, 773 P.2d 29 (Utah 1989), *cert. denied*, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989), as follows:

> The first requirement for a finding of plain error is that the error be "plain," i.e., from our examination of the record, we must be able to say that it should have been obvious to a trial court that it was committing error.... The second and somewhat interrelated requirement for a finding of plain error is that the error affect the substantial rights of the accused, i.e., that the error be harmful.

*Id.* at 35 (citations omitted).

Therefore, even if we can conclude that the trial court made an obvious error, we will not reverse unless defendant demonstrates that, absent the error, there is a sufficient likelihood of a different result. *Ellifritz*, 835 P.2d at 174. "There is a sufficient likelihood of a different result when the appellate court's confidence in the verdict is

P.2d 459, 462 (Utah 1989); *accord Ellifritz*, 835 P.2d at 177.

undermined." *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)).

▮▮▮ As an alternative means of challenging the jury selection procedures for the first time on appeal, defendant claims that his trial counsel was constitutionally ineffective. When a defendant raises the issue of ineffective assistance of counsel, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). "In order to bring a successful ineffective assistance of counsel claim pursuant to the Sixth Amendment, a defendant must show [1] that trial counsel's performance was deficient in that it 'fell below an objective standard of reasonableness,' and [2] that the deficient performance prejudiced the outcome of the trial." *State v. Garrett,* 849 P.2d 578, 579 (Utah App.), *cert. denied,* 860 P.2d 943 (Utah 1993) (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064) (footnote omitted).[4]

When a defendant raises both the issues of plain error and ineffective assistance of counsel on direct appeal, a common standard is applicable.

> The common standard exists because plain error requires a showing that absent the error, there is a substantial likelihood of a more favorable outcome for defendant, and similarly, the ineffective assistance standard requires a showing that but for the ineffective assistance of counsel, the result would likely have been different for defendant. Failure to meet the plain error requirement of prejudice means that defendant likewise fails to meet the required showing under the ineffective assistance of counsel standard.

*Ellifritz,* 835 P.2d at 174 (citation omitted).

## ANALYSIS

Defendant argues that the trial court committed plain error by not removing for cause prospective jurors Geurts, Pike, Heap, and Barber. Specifically, defendant argues that Geurts, Heap, and Pike were biased against him, and that Barber was incompetent to serve on the jury. Defendant also argues that since prospective juror Geurts should have been removed for cause, it was reversible error to compel him to use one of his peremptory challenges to remove her.

### Juror Bias

▮▮▮ "An accused has a right to a fair trial by an impartial jury." *State v. Bishop,* 753 P.2d 439, 448 (Utah 1988) (footnote omitted); *accord* U.S. Const. amends. V, VI; Utah Const. art. I, §§ 7, 10 & 12; and Utah R.Crim.P. 18(e)(14). Voir dire serves two functions: "the detection of actual bias [sufficient to challenge for cause], and the collection of data to permit informed exercise of the peremptory challenge." *State v. Taylor,* 664 P.2d 439, 447 (Utah 1983) (citations omitted). The scope of the voir dire inquiry is left to the sound discretion of the trial court because only the trial court knows when it is satisfied that a prospective juror is impartial. *Hornsby v. Corporation of the Presiding*

---

4. In *Garrett,* we also discussed additional requirements that must be satisfied in order for us to address an ineffective assistance of counsel claim on direct appeal.

> In addition to the substantive requirements ... there is a threshold requirement that must be met before we may consider an ineffective assistance of counsel claim on direct appeal. Ordinarily, such a claim may only be raised through a collateral attack in habeas corpus proceedings because "the trial record is insufficient to allow the claim to be determined" on direct appeal. *State v. Humphries,* 818 P.2d 1027, 1029 (Utah 1991). Consequently, we may consider an ineffective assistance claim on direct appeal only if the record is adequate to permit a decision. A trial record is adequate only if "we are not aware of any evidence or arguments which might be made that is [sic] not now before us." *Id.*

849 P.2d at 580 (footnote omitted). Finally, in order to address. an ineffective assistance of counsel claim on direct appeal, defendant must also be "represented by new counsel on appeal because it is 'unreasonable to expect [trial counsel] to raise the issue of his own ineffectiveness at trial on direct appeal.'" *Id.* at 580 n. 3 (quoting *Jensen v. DeLand,* 795 P.2d 619, 621 (Utah 1989)).

*Bishop of the Church of Jesus Christ of Latter–Day Saints,* 758 P.2d 929, 932 (Utah App.), *cert. denied,* 773 P.2d 45 (Utah 1988); *accord State v. Gotschall,* 782 P.2d 459, 462 (Utah 1989); *State v. Lacey,* 665 P.2d 1311, 1312 (Utah 1983); *State v. Jonas,* 793 P.2d 902, 906 (Utah App.), *cert. denied,* 804 P.2d 1232 (Utah 1990).

■ A question of potential bias arises when a prospective juror has been the victim of a similar crime. When such a question arises, the trial court must probe to determine whether the prospective juror is, in fact, impartial despite the past experience. This is generally accomplished by the trial court simply asking if the juror can be impartial. *See, e.g., Jonas,* 793 P.2d at 905–06; *Hornsby,* 758 P.2d at 931–32. If, after probing the prospective juror's state of mind, the trial court is satisfied that the juror can view and weigh the evidence impartially, the inquiry is at an end.

■ In the present case, prospective jurors Geurts, Heap, and Pike indicated that they had all been victims of similar crimes. Thus a question of bias was raised with respect to all three jurors. The trial court was therefore required to probe further to determine if the prospective jurors would be, in fact, impartial despite having been victims of similar crimes. The trial court asked the following four questions:

If you or a member of your family were involved in a case such as the one before you, would you be willing to have your case or theirs tried by eight people in the same frame of mind as you are now in?

Possessing the state of mind that you have, is there anything that would prevent any of you from acting fairly and impartially without prejudice to the substantial rights of either party in this case?

Is there any reason known to any of you why you could not try the case fairly and impartially upon any evidence and without any bias for or against either party to the action? . . . .

From your answers, I understand that each of you individually now declares to me that you can listen attentively to the evidence, can apply the law to the facts which you may find to exist and can reach a verdict which is fair and impartial as to each party in this controversy. Are there any of you who for any reason feel that you cannot?

None of the prospective jurors offered a response that would indicate any bias as a result of having been victims similar crimes.

In *State v. Woolley,* 810 P.2d 440, 441 (Utah App.), *cert. denied,* 826 P.2d 651 (Utah 1991), three prospective jurors indicated that they had been victims of similar crimes. The trial court asked the three prospective jurors collectively the following question:

Those three of you who have responded, recognizing that this is a different time and place and circumstances, would that experience, having been the victim of that type of crime, affect your ability to be fair and impartial in this case, that is, would you be unable to set aside that experience and hear the evidence in this case and rule on the evidence based upon what you hear and the credibility of the witnesses? If you would not be able to do so, I want you to raise your hand.

*Id.* None of the prospective jurors raised a hand to indicate any bias from having been victims of similar crimes. Defense counsel moved to strike all three jurors for cause. The trial court initially removed all three jurors but subsequently reinstated one of the removed jurors. Defense counsel then removed the reinstated juror with a peremptory challenge. The court held that when prospective jurors indicate that they have been victims of a similar crime, an inference of bias is raised. Once there is an inference of bias, according to the court, "the inference is generally not rebutted simply by a subsequent general statement by the juror that he or she can be fair and impartial." *Id.* at 445. The court concluded that the one compound question asked by the trial court and the unequivocal answers of the prospective jurors were not sufficient to rebut the inference of bias. *Id.* at 447–48. The court therefore reversed defendant's conviction and remanded the case for a new trial.

■ *Woolley* is distinguishable from the instant case in at least three respects. First, defense counsel in *Woolley* moved to strike

all three challenged jurors for cause. Where defense counsel challenges a juror for cause, the decision to remove the juror lies within the sound discretion of the trial court. *Gotschall,* 782 P.2d at 462; *accord Ellifritz,* 835 P.2d at 177. Thus, the *Woolley* court was required to review the trial court's decision not to remove a juror for cause for an abuse of discretion. By contrast, in the present case, where defense counsel did not object to jurors for cause, we review the trial court's actions for plain error. *Ellifritz,* 835 P.2d at 174. The threshold requirements necessary to demonstrate the trial court committed plain error are much higher than those required to demonstrate the trial court committed an abuse of discretion. Therefore, the holding in *Woolley* is not applicable where defense counsel made no objection for cause to the jurors in question, as in the present case.

Second, *Woolley* involved a rather unusual situation during voir dire where the trial court removed a prospective juror for cause and without further questioning reinstated the removed juror. Where the trial court initially agreed to remove a prospective juror for cause, some additional questioning of that particular juror may be required if the trial court is considering reinstating the juror. Such an unusual situation is not, however, present in the instant case.

Finally, the *Woolley* court focused on the fact that the trial court asked only one compound question of the prospective jurors who indicated that they had been victims of similar crimes. This one question, according to the court, was not sufficient to rebut the inference of bias.[5] In the instant case, however, the court probed the question of bias with four different questions. The four questions asked by the trial court in the present case were sufficient to rebut any question of bias regarding prospective jurors Geurts, Heap, and Pike.

We conclude, under a plain error analysis, that the trial court's voir dire was adequate to rebut any question of bias that arose when prospective jurors Geurts, Heap, and Pike indicated they had been victims of similar crimes.[6] It follows, therefore, that in light of our holding that there was no error in the voir dire conducted by the trial court, there could likewise be no prejudice in the procedure that affected the substantial rights of defendant.

## Juror Incompetence

■ Defendant further argues that the trial court erred by not excusing prospective juror Barber for cause because he was incompetent to serve. Defendant's argument is based on the fact that Mr. Barber had a scheduling conflict regarding his wife's need for physical therapy. This scheduling conflict, according to defendant, diverted Barber's full attention from the trial and therefore rendered him incompetent.

Defendant misconstrues the meaning of the term "incompetent" in this context.

---

**5.** However, in *Hornsby* we held that one general question was sufficient to rebut any questions involving juror bias. 758 P.2d at 933. In *Hornsby,* plaintiff's counsel requested, since Hornsby was suing the Church of Jesus Christ of Latter Day Saints, that the trial court inquire into the religious affiliations of the prospective jurors. The trial court refused to inquire into individual affiliations and instead asked the following question:

> Are there any of you who feel that you would have trouble being an impartial juror because of feelings you may have either pro or con with regard to the L.D.S. Church that you think might affect your ability to be a fair and impartial juror in this case? If so, I'd like you to raise your hand.

*Id.* at 931–32. None of the prospective jurors raised a hand. We held that "the question asked by the trial court was sufficient to detect any actual subjective bias to warrant a challenge for cause under [Utah R.Civ.P. 47(f)(6)]." *Id.* at 932.

**6.** Defendant argues that it was reversible error to require him to use a peremptory challenge on prospective juror Geurts since she should have been removed for cause. *See State v. Bailey,* 605 P.2d 765, 768 (Utah 1980) (it is reversible error to compel defense counsel to use peremptory challenges to remove prospective jurors that should have been removed for cause); *but see Ross v. Oklahoma,* 487 U.S. 81, 86, 108 S.Ct. 2273, 2277, 101 L.Ed.2d 80 (1988) (focus is not whether defendant was required to use peremptory challenge to strike juror who should have been removed for cause, but on whether jury that actually sat was fair and impartial). However, in light of our holding that prospective juror Geurts was not subject to removal for cause, defendant's argument fails.

Utah Code Ann. § 78–46–8(2) (1992), in effect at the time of defendant's trial,[7] defined those individuals incompetent to serve as follows:

> (2) The following persons are not competent to serve as jurors:
>
> (a) a person who has been convicted of a felony;
>
> (b) a person serving on active duty in the military service of the United States;
>
> (c) a person who is not capable because of a physical or mental disability of rendering satisfactory jury service. Any person who claims this disqualification may be required to submit a physician's certificate verifying the disability and the certifying physician is subject to inquiry by the court at its discretion; or
>
> (d) a person who does not meet the requirements of Section 78–46–7.[8]

While prospective juror Barber may have had a scheduling conflict, he was not, as a matter of law, incompetent to serve on defendant's jury. The trial court did not commit plain error, therefore, by not removing Barber for cause due to incompetence.

▮ Defendant claims, however, that since Barber may have been distracted, he was unable to serve impartially. This argument is without merit. Incompetence does not deal with bias or prejudice. Bias and prejudice refer to a "state of mind [that] exists on the part of the juror with reference to the cause, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging [the prospective juror]." Utah R.Crim.P. 18(e)(14). Bias and prejudice, therefore, refer to a state of mind that would lead a juror to favor one party over another. A challenge for cause will lie against a juror who is incompetent or biased or both. However, they are not overlapping characteristics as urged by defendant.

Juror Barber did not indicate that he was, in any way, biased or prejudiced against the defendant or the prosecution. There was not even a question of bias raised, which would have required the trial court to probe further. All Mr. Barber indicated was that he had a scheduling conflict that might demand some of his attention. If the question were answered forthrightly, many prospective jurors would probably admit that something in their personal lives could cause them to divert some of their attention from the trial. Such distractions, however, do not rise to the level of a challenge for cause.[9]

We conclude that the trial court did not commit plain error in seating juror Barber. It likewise follows, that since there was no error committed in seating Mr. Barber, there could be no prejudice in the procedure that

---

7. Section 78–46–8 was amended effective July 1, 1992. Utah Code Ann. § 78–46–8 (Supp.1993).

8. Utah Code Ann. § 78–46–7 (1992), in effect at the time of defendant's trial, provided as follows:
   > (1) A person is competent to serve as a juror if the person is:
   >    (a) a citizen of the United States;
   >    (b) over the age of 18 years;
   >    (c) a resident of the county; and
   >    (d) able to read, speak, and understand the English language.
   > (2) In municipalities which are not primary or secondary locations for the circuit court, a person is not competent to serve as a juror in cases involving the violation of a municipal ordinance unless the person, in addition to meeting the requirements listed in Subsection (1), resides within the municipality whose ordinance is alleged to have been violated or, in the case of a municipality with a population of fewer than 3,000 persons, resides within 15 miles of the municipality.

Section 78–46–7 was amended in 1992 and 1993. Utah Code Ann. § 78–46–7 (Supp.1993).

9. The trial court has discretion to excuse jurors who have severe scheduling conflicts. Utah Code Ann. § 78–46–15 (1992), in effect at the time of defendant's trial, provided:
   > (1) The court, upon request of a prospective juror or on its own initiative, shall determine on the basis of information provided on the juror qualification form or by interview with the prospective juror, or by other competent evidence, whether the prospective juror should be excused from jury service. The clerk shall enter this determination in the space provided on the juror qualification form.
   > (2) A person may be excused from jury service by the court, at its discretion, upon a showing of undue hardship, extreme inconvenience, or public necessity for any period the court deems necessary.

Section 78–46–15 was amended effective July 1, 1992. Utah Code Ann. § 78–46–15 (Supp.1993).

affected the substantial rights of defendant.[10]

### Ineffective Assistance of Counsel

Defendant argues, in the alternative, that his counsel was ineffective in not challenging for cause prospective jurors Geurts, Heap, Pike, and Barber. Because we have concluded that defendant was not in any way prejudiced by voir dire, defendant could not have been prejudiced by the conduct of his counsel. *Ellifritz*, 835 P.2d at 174 ("Failure to meet the plain error requirement of prejudice means that defendant likewise fails to meet the required showing under the ineffective assistance of counsel standard."). Defendant's ineffective assistance of counsel claim therefore fails.

### Convictions for Robbery and Burglary

Defendant argues that his convictions for robbery and burglary illegally punish him twice for the same crime, since "one could not have committed the robbery without necessarily committing the burglary." Defendant argues, therefore, that his sentence underlying the burglary conviction is illegal and should be vacated. Defendant did not raise this issue before the trial court, but urges this court to address it for the first time under Utah Rule of Criminal Procedure 22(e), which provides, "[t]he court may correct an illegal sentence, or a sentence imposed in an illegal manner, at any time." However, this rule has been interpreted as granting continuing jurisdiction to the trial court to correct an illegally imposed sentence. *See State v. Gallegos*, 849 P.2d 586, 591–92 (Utah App.1993). Therefore, the trial court is the proper forum to first challenge the imposition of allegedly illegal sentences.[11]

### CONCLUSION

The trial court did not commit plain error by not removing for cause jurors Geurts, Heap, and Pike. The trial court also did not commit plain error by not removing for cause juror Barber. We may not address defendant's sentencing argument for the first time on appeal.

We therefore affirm defendant's conviction.

RUSSON and GARFF, JJ., concur.

---

10. In view of this disposition we need not rule upon the State's Contingent Motion to allow it to supplement the record with an affidavit from juror Barber.

11. Alternatively, defendant argues that this court should address the issue of illegal sentences for the first time on appeal under either a plain error analysis or an ineffective assistance of counsel analysis. However, since defendant still has a remedy in the trial court, this argument is unavailing.