Robert DAVIS and Michele Davis,
Plaintiffs and Appellants,

v.

GRAND COUNTY SERVICE AREA,
dba Allen Memorial Hospital,
Defendant and Appellee.

No. 940582–CA.

Court of Appeals of Utah.

Oct. 26, 1995.

Bruce Wycoff, Salt Lake City, for Appellants.

M. Dayle Jeffs, Provo, for Appellee.

Before ORME, GREENWOOD and WILKINS, JJ.

ORME, Presiding Judge:

Plaintiffs Robert and Michele Davis appeal the trial court's denial of both their motion for a new trial premised on a theory of jury and community bias, and their subsequent motion to reconsider, based on a claim of inadequate jury voir dire. We affirm.

## FACTS

Robert and Michele Davis brought a medical malpractice action against Allen Memorial Hospital for the wrongful death of their newborn son.[1] Prior to trial, the Davises, on at least two occasions, communicated to their then-attorney their concern that they would not receive a fair trial in Moab, Utah, in a malpractice action against the area's only hospital. Despite this concern, their attorney did not seek a change of venue.

Prior to trial, the Davises' counsel submitted a list of twenty-eight questions he wanted the court to ask prospective jurors during voir dire. In response to defense counsel's objection, the court disallowed proposed question No. 17, which stated: "Do you believe that a verdict against Allen Memorial Hospital in this case could affect you?"[2] Af-

---

1. The Davises initially named a physician as an additional defendant, but he was subsequently dismissed.

2. The court also disallowed three other questions from plaintiff's proposed voir dire inquiry. However, as the Davises do not now contest this part of the court's ruling, we need not elaborate on the substance of these questions.

ter indicating to the parties which voir dire questions would be allowed, the court asked the Davises' counsel if he had "[a]ny exceptions to be noted." Plaintiff's counsel did not take exception to the court's rulings on voir dire.

The court conducted voir dire and asked all of the proposed questions that had been allowed with the exception of question No. 13, which stated: "What magazines do you or members of your household subscribe to?" Although provided adequate opportunity, neither party objected to the court's failure, apparently due only to oversight, to ask question No. 13. At the conclusion of voir dire, both sides passed the jury for cause.

Trial was held in Moab over the course of four days. At the conclusion of trial, the jury rendered a verdict in favor of Allen Memorial Hospital, determining the hospital was not negligent in its care of the Davises' infant.

On December 16, 1993, the Davises, acting pro se,[3] filed a motion for a new trial claiming the jury was biased and that due to the small size of the community, it was not possible for them to receive a fair trial in Moab. In support of their motion, the Davises contended they were prevented from receiving a fair trial because (1) one of the jurors was sleeping throughout much of the trial; (2) during voir dire, the jurors who claimed to have known the defendants did not say *without a doubt* that they could act impartially; (3) the court allowed one of the defense witnesses to remain in the courtroom throughout the trial, enabling her to shape her testimony to fit with the testimony and evidence previously presented; and (4) the court allowed another judge to remain in the courtroom as a spectator, even though he had recused himself as the trial judge due to his previous "legal involvement" with defendant Allen Memorial Hospital. Significantly, however, nothing was said in the moving papers about the potential bias created by the jurors' likely exposure to numerous pre-trial articles in the local newspaper, *The Times–Independent,* concerning the precarious financial condition of Allen Memorial Hospital. On February 2, 1994, the trial court denied the Davises' motion for a new trial.

On February 23, 1994, the trial court extended the Davises' time to appeal to April 4, 1994. On March 2, having obtained new counsel, the Davises filed a motion for reconsideration of the order denying their motion for a new trial. They supported their motion to reconsider with a memorandum and fourteen pre-trial articles, published in *The Times–Independent,* addressing the financial plight of Allen Memorial Hospital. The Davises argued the juror voir dire was inadequate to ferret out which jurors may have been exposed to the negative publicity surrounding the hospital and asked the court to grant them a new trial on this basis.

Recognizing that the trial court would not rule on the motion to reconsider prior to the running of the extended time to file an appeal, the Davises filed a notice of appeal on April 4, 1994. The trial court entered its order denying the motion for reconsideration on May 2, 1994. On May 9, the Davises filed a second notice of appeal. The Utah Supreme Court consolidated the two appeals and transferred the case to this court.

## MOTION FOR NEW TRIAL

Motions for new trials are generally not favored in the law, in part because it is costly and inefficient to hold multiple trials on the same cause of action. *See Crookston v. Fire Ins. Exch.,* 817 P.2d 789, 803 (Utah 1991). Courts do not grant new trials unless it is reasonably clear that prejudicial error has tainted the proceeding or that substantial justice has not been done. *Id.* at 804–05. Ultimately, the motion invokes the sound discretion of the trial court, and appellate review of its ruling is quite limited. *Id.* at 804–05. However, a court will grant a new trial, in limited circumstances,[4] if the motion

---

3. On January 11, 1994, the Davises' trial counsel officially withdrew as their counsel of record.

4. Rule 59 of the Utah Rules of Civil Procedure defines the limited circumstances in which a new trial is appropriate:

    (1) Irregularity in the proceedings of the court, jury or adverse party, or any order of

is timely brought, i.e., if it is brought within ten days after the entry of judgment. Utah R.Civ.P. 59.

In the instant case, the Davises filed a timely motion for a new trial alleging the jury was biased and that, due to the small size of the community, it was not possible for them to have received a fair trial in Moab. In support of their motion, the Davises contended that four specific errors prevented them from receiving a fair trial. The trial court denied this motion, and the Davises filed a timely appeal.

■ However, the Davises, despite filing a timely notice of appeal from the denial of their timely motion for a new trial, have not briefed the issues raised in that motion.[5] Instead, their appeal advances a completely different theory—one that was at the heart of their motion to reconsider—namely, that voir dire was inadequate to allow them to meaningfully exercise their peremptory challenges, leaving them with a potentially biased jury. Accordingly, we need not address any errors that may have existed in the court's initial denial of the motion for a new trial, as only the denial of the motion to reconsider is

the court, or abuse of discretion by which either party was prevented from having a fair trial.

(2) Misconduct of the jury; and whenever any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by resort to a determination by chance or as a result of bribery, such misconduct may be proved by the affidavit of any one of the jurors.

(3) Accident or surprise, which ordinary prudence could not have guarded against.

(4) Newly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial.

(5) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice.

(6) Insufficiency of the evidence to justify the verdict or other decision, or that it is against law.

(7) Error in law.

*Id.*

5. In so observing, we do not suggest their present counsel is remiss in not developing those issues on appeal.

effectively before us. *See State v. Yates,* 834 P.2d 599, 602 (Utah App.1992).

## MOTION TO RECONSIDER

■ Utah courts have "consistently held that our rules of civil procedure do not provide for a motion for reconsideration of a trial court's order or judgment."[6] *Ron Shepherd Ins., Inc. v. Shields,* 882 P.2d 650, 653 n. 4 (Utah 1994). *See Salt Lake City Corp. v. James Constructors, Inc.,* 761 P.2d 42, 44 (Utah App.1988). Nonetheless, courts will accord some dignity to a motion so entitled if it could properly have been brought pursuant to some rule and was merely erroneously titled. *Ron Shepherd Ins.,* 882 P.2d at 653 n. 4. *See Watkiss & Campbell v. Foa & Son,* 808 P.2d 1061, 1064–65 (Utah 1991). Reviewing courts will analyze such motions for reconsideration in accordance with their substance and purpose. *See Trembly v. Mrs. Fields Cookies,* 884 P.2d 1306, 1310 n. 2 (Utah App.1994); *State v. Parker,* 872 P.2d 1041, 1044 (Utah App.), *cert. denied,* 883 P.2d 1359 (Utah 1994).

■ In the instant case, the Davises' motion to reconsider is the functional equivalent of a Rule 59 motion requesting a new trial.[7] "A motion for a new trial shall be

6. The rationale for this rule was reiterated in *Peay v. Peay,* 607 P.2d 841, 843 (Utah 1980). " '[I]f the party ruled against were permitted to go beyond the rules' " and secure a different ruling upon reconsideration, " 'why should not the other party who is now ruled against be permitted to make a motion for *re* -re-consideration ... ?' " *Id.* (quoting *Drury v. Lunceford,* 18 Utah 2d 74, 76, 415 P.2d 662, 663 (1966)). "[P]ractical expediency demands that there be some finality to the actions of the court." *Id.*

7. Out of an abundance of caution, the trial court also analyzed the motion to reconsider under Rule 60(b)(2). It appears that this analysis was unnecessary. Rule 60(b) of the Utah Rules of Civil Procedure provides in part:

On motion and upon such terms as are just, the court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ... (2) newly discovered *evidence* which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b).

Utah R.Civ.P. 60(b) (emphasis added). The gravamen of the Davises' argument is that voir dire was inadequate to ferret out any potential bias jurors may have harbored due to exposure to a

served not later than 10 days after the entry of the judgment." Utah R.Civ.P. 59(b). The Davises filed their motion to reconsider, which we regard as a second motion for a new trial that is entirely distinct from the first, thirty-one days after the court denied their initial motion for a new trial and almost three months after the entry of judgment. Because the trial court was without jurisdiction to consider the merits of the Davises' untimely motion, see *Richins v. Delbert Chipman & Sons Co.*, 817 P.2d 382, 387 (Utah App.1991), their voir dire claims raised in the motion to reconsider are, in essence, raised for the first time on appeal. Accordingly, we will review the adequacy of voir dire only against a plain error standard.[8] See *State v. Brooks*, 868 P.2d 818, 821 (Utah App.), cert. granted, 883 P.2d 1359 (Utah 1994).

## ADEQUACY OF VOIR DIRE

■ We now consider whether the errors that the Davises contend the court made in voir dire rise to the level of plain error. The requirements for determining whether plain error has occurred were articulated in *State v. Eldredge*, 773 P.2d 29 (Utah), cert. denied, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989), as follows:

The first requirement for a finding of plain error is that the error be "plain," i.e., from our examination of the record, we must be able to say that it should have been obvious to a trial court that it was committing error.... The second and somewhat interrelated requirement for a finding of plain error is that the error

affect the substantial rights of [a party], i.e., that the error be harmful.

*Id.* at 35 (citations omitted).

The Davises claim two separate errors occurred during voir dire. First, the Davises point to the trial court's refusal to ask each juror whether he or she "believe[d] that a verdict against Allen Memorial Hospital in this case could affect [them]?" Second, they point to the court's failure to ask the jurors "[w]hat magazines do you or members of your household subscribe to?" The Davises contend that if the court had asked these questions, they would have been able to evaluate the impact the pretrial publicity had on the prospective jurors and more meaningfully exercise their peremptory challenges.

■ In the instant case, the court did not commit plain error by refusing to ask the prospective jurors whether they "believe[d] that a verdict against Allen Memorial Hospital in this case could affect [them.]" The court's refusal was justifiable on several grounds, including that the question was vague.

Moreover, the Davises have failed to fulfill the second requirement for a determination of plain error, i.e., they have not demonstrated how the court's refusal to ask this question prejudiced their case. See *Eldredge*, 773 P.2d at 35; *State v. Brooks*, 868 P.2d 818, 821 (Utah App.), cert. granted, 883 P.2d 1359 (Utah 1994). Although it employed different language, the court nonetheless questioned the jurors concerning possible bias.[9] Finally,

---

media blitz concerning the financial straights of the defendant hospital. However, given the pervasiveness of the media coverage concerning the hospital, it cannot be said that this "evidence" was in any way undiscoverable, in the exercise of due diligence, prior to trial.

Moreover, the trial court's analysis of the Davises' motion to reconsider as a Rule 60(b) motion was unnecessary because the pretrial publicity is not properly regarded as "newly discovered evidence." See *State v. Goddard*, 871 P.2d 540, 545 (Utah 1994). "[N]ewly discovered evidence should clarify a fact that was contested and resolved against the movant." *Id.* See *State v. Worthen*, 765 P.2d 839, 851 (Utah 1988). The newspaper articles indicating the precarious financial condition of the hospital were not intended to clarify a contested fact concerning the liability of the defendant hospital. While the

newspaper articles may have been germane to the jury selection process, the articles were never sought to be introduced as evidence and, regardless of when they were discovered, would be of questionable relevance to proving or refuting the Davises' claim of negligence on a particular occasion.

8. Such a standard is more rigorous than the abuse-of-discretion standard we would apply in this case if the subject motion had been timely brought and the trial court thus had jurisdiction to consider it on its merits. See *State v. Thomas*, 830 P.2d 243, 245 (Utah 1992); *Christenson v. Jewkes*, 761 P.2d 1375, 1377 (Utah 1988).

9. We note that the trial court explored the potential for juror bias on numerous occasions. The court asked whether any juror had acquired in-

this question was not sufficiently connected to pretrial publicity to call the court's, or the jurors', attention to the potential bias that the Davises now claim exists.

At first blush, the other question, involving which magazines the prospective jurors or members of their households subscribe to, appears to be the sort that properly begins to probe a juror's potential bias based on exposure to pretrial publicity.[10] *See Barrett v. Peterson,* 868 P.2d 96, 99–101 (Utah App. 1993); *Evans ex rel. Evans v. Doty,* 824 P.2d 460, 462–67 (Utah App.1991), *cert. denied,* 836 P.2d 1383 (Utah 1992). However, a closer examination of the Davises' claim reveals it to be flawed. Apparently neither the Davises, who never mentioned it when expressing concerns about getting a fair trial in their pretrial correspondence or in their pro se post-trial motion, nor their trial counsel, who resided in Salt Lake City, were cognizant of the localized publicity. Therefore, it is difficult to see how counsel would have known to pose appropriate follow-up questions, even if any juror had indicated he read *The Times–Independent. See, e.g., Barrett,* 868 P.2d at 99–101. Moreover, the chances of even that much happening are slim. Most people would not think to name the *newspapers* they read if asked to name the *magazines* to which they subscribe. Significantly, none of the fourteen *newspaper* articles that the Davises point to as having the potential to bias the jurors were published in a magazine. Thus, even if the court had asked the jurors which magazines they, or members of their households, subscribe to, this question would have had little or no chance of ferreting out the potential bias that the Davises

now claim existed by reason of the newspaper articles. Simply put, even if we were to conclude that it was obvious error for the court to have failed to ask the question concerning which magazines the jurors subscribed to, the Davises have not demonstrated that this error prejudiced their case. *See Eldredge,* 773 P.2d at 35; *Brooks,* 868 P.2d at 821. From all that appears, even if the question had been asked it would not have resulted in uncovering any exposure to the newspaper articles in question.

■ The Davises also seem to contend that the pretrial publicity surrounding the hospital was so pervasive that it was plain error for the trial court not to conduct voir dire, completely on its own initiative and without reference to what questions were requested, so as to uncover any prejudicial effect the media coverage may have had on the jurors.[11] The trial court has no such burden. With the exception of ensuring that each juror is a United States citizen; over the age of eighteen; a resident of the county; able to read, speak, and understand the English language; and has not been convicted of a felony that has not subsequently been expunged, *see* Utah Code Ann. § 78–46–7 (Supp.1995), the course of jury voir dire is largely the attorney's obligation. Although the court may, in its discretion, ask voir dire questions of its own design, it predominately plays the role of directing the jury selection process on behalf of the attorneys, helping them to learn whatever *they* believe they need to know to seek the removal of jurors for cause and to intelligently exercise their peremptory challenges. *See* Utah R.Civ.P.

formation about any of the parties involved in the case and if this information would bias them for or against any of the parties. The court went on to question the jurors concerning their feelings about medical malpractice, lawsuits in general, and specifically lawsuits against doctors or hospitals.

· While the trial court is obliged to conduct voir dire so as to allow counsel to intelligently exercise peremptory challenges, Rule 47(a) does not require that all of counsel's submitted questions be asked, nor that they be asked in the exact form as submitted by counsel....

*Barrett v. Peterson,* 868 P.2d 96, 101–02 n. 6 (Utah App.1993).

**10.** The Davises erroneously contend that the trial court refused to ask the prospective jurors if they read *The Times–Independent,* the newspaper of general circulation in Grand County. Actually, no such question was submitted to the court. Thus, the court did not *refuse* to ask the question, but rather did not pose it of its own accord.

**11.** While it is clear that the trial judge knew of the media attention given to the hospital at the time he considered the Davises' motion for reconsideration, it is not clear whether, at the time of voir dire, the trial judge, who is not a Moab resident, was in any way cognizant of the numerous articles concerning the hospital published in Moab's local newspaper.

47(a). It is not the paternalistic duty of the court to interject itself into the voir dire process by fashioning additional voir dire questions that neither party has requested.

Absent either attorney submitting appropriate foundation and questions concerning the effects of pretrial publicity, *see Barrett,* 868 P.2d at 99–101; *Evans,* 824 P.2d at 462–67, the court made no error, plain or otherwise, by not asking such voir dire questions on its own initiative.

## INEFFECTIVE ASSISTANCE

In addition, the Davises claim that their trial counsel was constitutionally ineffective. Specifically, the Davises contend they are entitled to a new trial because their trial counsel's refusal to seek a change of venue, despite their repeated request that he do so, constitutes ineffective assistance of counsel.

■ The Davises rely on *State v. Cook,* 881 P.2d 913 (Utah App.1994), *cert. denied,* 890 P.2d 1034 (Utah 1995), to support their contention that the plain error rule exists to protect clients from less-than-perfect counsel, including counsel's inadvertence or neglect. *See id.* at 915 & n. 3. However, the Davises reliance on *State v. Cook,* a criminal appeal, is misplaced. The doctrine of ineffective assistance of counsel arises out of the Sixth Amendment to the United States Constitution and has no parallel in the civil context. We will not extend the Sixth Amendment protection against ineffective assistance of counsel to civil cases because in the civil arena there is no analogous constitutional right, different interests are at stake, the parties in civil actions are generally responsible for hiring their own attorneys, and other remedies for counsel's neglect are available to civil litigants. *See* Alan Stephens, Annotation, *Incompetence of Counsel as Ground for Relief from State Court Civil Judgment,* 64 A.L.R.4th 323, 336 (1988).

■ "The general rule is that in civil cases a new trial will not be granted based upon the incompetence or negligence of one's own trial counsel." *Jennings v. Stoker,* 652 P.2d 912, 913 (Utah 1982). *See Maltby v. Cox Constr. Co.,* 598 P.2d 336, 341 (Utah),

*cert. denied,* 444 U.S. 945, 100 S.Ct. 306, 62 L.Ed.2d 314 (1979). In the civil context, a malpractice action, not a new trial, is frequently suggested as the appropriate remedy for the client whose counsel's performance falls below the standard of professional competence. *See Carroll v. Abbott Laboratories, Inc.,* 32 Cal.3d 892, 187 Cal.Rptr. 592, 595, 654 P.2d 775, 778 (1982) (en banc); *Palverari v. Finta,* 129 Conn. 38, 26 A.2d 229, 230 (1942); *Wooddy v. Wooddy,* 256 Md. 440, 261 A.2d 486, 495 (1970); *Farmer Foundation Co. v. Leach,* 680 S.W.2d 828, 830 (Tex.App. 1984). Accordingly, we will not grant the Davises a new trial based on their claim that their counsel was constitutionally ineffective.

## CONCLUSION

The issues raised in the motion to reconsider are, in effect, raised for the first time on appeal and are accordingly reviewed only for plain error. The trial court's refusal to ask one voir dire question and failure to ask another did not constitute plain error. Moreover, where the parties passed the jury for cause and did not submit voir dire questions concerning the pre-trial publicity surrounding the defendant hospital, the trial court committed no error, plain or otherwise, by failing to probe for bias based on exposure to pretrial publicity. Finally, civil litigants are not entitled to a new trial on the basis of ineffective assistance of counsel. Accordingly, we affirm.

GREENWOOD and WILKINS, JJ., concur.