2014 UT App 179

**STATE of Utah, Plaintiff and Appellee,**

v.

**Francisco ALVAREZ,[1] Defendant and Appellant.**

**No. 20130230–CA.**

Court of Appeals of Utah.

July 31, 2014.

---

**1.** Alvarez's last name was misspelled "Alverez" throughout the proceedings in the trial court. We correct the error here.

Joanna E. Landau and Adam Alba, for Appellant.

Sean D. Reyes and Daniel W. Boyer, for Appellee.

Judge GREGORY K. ORME authored this Memorandum Decision, in which Judge J. FREDERIC VOROS JR. and Senior Judge RUSSELL W. BENCH concurred.[2]

Memorandum Decision

ORME, Judge:

¶ 1 Defendant Francisco Alvarez was convicted of murder, a first degree felony; possession of a dangerous weapon by a restricted person, a second degree felony; and unlawful discharge of a firearm, a third degree felony. He appeals, arguing that the trial court abused its discretion by denying his request to ask potential jurors if they would be embarrassed to return a not-guilty verdict in a murder case. We affirm.

¶ 2 On the evening of the murder, hundreds of people had gathered at a Salt Lake City park for youth league baseball games and team picture day. Many of the park-goers heard gunshots, and at least three adults saw Defendant shoot the victim four or five times in the back.[3] According to witnesses, Defendant then got on his bicycle and began to ride away. One baseball coach heard the gunshots and ran in their direction. After several people pointed toward Defendant, the coach chased after him. During the pursuit, the coach saw Defendant throw a gun toward a river that ran through the park. Eventually, the coach caught up with Defendant, tackled him off the bicycle, and held him down until police arrived.

¶ 3 Police found five live rounds of .22-caliber ammunition on Defendant. A short while later, police discovered a .22-caliber gun near the spot where the coach had tackled Defendant. Crime scene analysts later confirmed that the ammunition casings Defendant was carrying matched the expended casings found where the shooting took place. Police investigators interviewed some seventeen witnesses, one of whom was only ten feet away from Defendant when he started shooting.

¶ 4 During jury selection at the outset of Defendant's trial, his counsel wanted to ask the potential jurors whether "any of them would feel any embarrassment for returning a not-guilty verdict knowing a defendant is charged with murder." The trial court did not allow the question. Defendant requested permission to ask the question two more times and was denied each time. After the jury was selected, Defendant objected to the trial court's decision not to ask the question. The trial court never did explain the basis for its disallowance, but it asked many other questions, hereafter summarized, designed to ascertain the potential traits and biases of the jurors.

¶ 5 A "trial court's management of jury voir dire [is] reviewed under an abuse of discretion standard." *Alcazar v. University of Utah Hosps. & Clinics*, 2008 UT App 222, ¶ 9, 188 P.3d 490. "Generally, the trial court is afforded broad discretion in conducting voir dire, but that discretion must be exercised in favor of allowing discovery of biases or prejudice in prospective jurors." *Depew v. Sullivan*, 2003 UT App 152, ¶ 10, 71 P.3d 601 (citation and internal quotation marks omitted). The key inquiry is "whether, considering the totality of the questioning, coun-

---

2. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11-201(6).

3. On appeal, we recite the facts in the light most favorable to the jury's verdict. *State v. Brown*, 948 P.2d 337, 339 (Utah 1997).

sel was afforded an adequate opportunity to gain the information necessary to evaluate jurors." *Taylor v. State*, 2007 UT 12, ¶ 70, 156 P.3d 739 (citation and internal quotation marks omitted). If the trial court's decision to exclude the question about juror embarrassment substantially impaired Defendant's right to the informed exercise of peremptory challenges, it is reversible error. *See Hornsby v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints*, 758 P.2d 929, 933 (Utah Ct.App.1988).

■ ¶ 6 We conclude that Defendant had ample information upon which to effectively base his peremptory challenges and that the trial court's refusal to ask the question about potential embarrassment did not constitute reversible error. While Defendant's proposed question may have incrementally aided Defendant in the wise use of his peremptory challenges, the question was just a means for gauging juror attitudes and predilections. The potential jurors were asked a variety of other questions that yielded Defendant a wealth of information that was useful for this purpose. For example, the prospective jurors were asked about their employment and family circumstances and their primary sources of news. They were also asked whether they would give more weight to the testimony of a police officer; whether they had ever used a semiautomatic handgun; whether they had negative feelings toward the legal system; whether they thought poorly of defense attorneys; whether they had used force to defend themselves; whether they had negative feelings toward those who consumed alcohol; whether they had moral or religious objections that would prevent them from judging another person; and whether they had close relatives or friends who had been victims of a crime. All things considered, the trial court's disinclination to ask one additional question during jury selection simply did not impair Defendant's ability to intelligently exercise his peremptory challenges, nor did it otherwise substantially affect his rights.

¶ 7 Affirmed.